**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

**BAP NOS. NH 10-052, NH 10-057**
_____

**Bankruptcy Case No. 03-13502-JMD**
**Adversary Proceeding No. 08-01160-LHK**
_____

**DOROTHY R. DUBY,**
**Debtor.**
_____

**DOROTHY R. DUBY,**
**Plaintiff-Appellant / Cross-Appellee,**

**v.**

**UNITED STATES OF AMERICA,**
**Defendant-Appellee / Cross-Appellant.**
_____

**Appeal from the United States Bankruptcy Court**
**for the District of New Hampshire**
**(Hon. Mark W. Vaughn, U.S. Bankruptcy Judge)**
_____

**Before**
**Hillman, Feeney, and Bailey,**
**United States Bankruptcy Appellate Panel Judges.**
_____

**Terrie Harman, Esq., on brief for Plaintiff-Appellant / Cross-Appellee.**

**Michael McCormack, Esq., on brief for Defendant-Appellee / Cross-Appellant.**
_____

**June 28, 2011**
_____

**Hillman, U.S. Bankruptcy Appellate Panel Judge.**

       The plaintiff-appellant / cross-appellee, Dorothy R. Duby (the "Debtor"), and the defendant-appellee / cross-appellant, United States of America, Department of Agriculture (the "USDA"), appeal from the bankruptcy court's final judgment and order dated July 21, 2010, awarding the Debtor $11,848.50 for attorney's fees for a violation of the automatic stay and $3,000.00 as a sanction for a violation of the discharge injunction.  The issues presented on appeal are: (1) whether the bankruptcy court erred, as a matter of law, in ruling that the Debtor was barred from recovering emotional distress damages for violations of the automatic stay and discharge injunction from the USDA; (2) whether the bankruptcy court erred when it concluded that the Debtor was entitled to recover attorney's fees despite not having incurred any other recoverable damages; and (3) whether, in light of the express prohibition of punitive damage awards against the United States under 11 U.S.C. § 106(a)(3), the bankruptcy court erred in awarding a $3,000.00 sanction.  For the reasons set forth below, we **AFFIRM IN PART** and **REVERSE IN PART**.

## BACKGROUND

       The facts necessary to decide this appeal are undisputed.  The Debtor filed a voluntary Chapter 7 petition on October 14, 2003.  On Schedule F – Creditors Holding Unsecured Nonpriority Claims ("Schedule F"), the Debtor listed the USDA as an unsecured nonpriority creditor in the amount of $1,800.00.  Despite having received actual notice of the Debtor's bankruptcy petition and the automatic stay, the USDA sent her eight monthly billing statements that each reflected a payment due of $11.50 and a due date of February 26, 2006, while her case was pending.  On July 15, 2004, the Debtor received a discharge.

The USDA received notice of the Debtor's discharge on July 30, 2004. Due to an internal error at the USDA, however, the Debtor's loan was incorrectly treated as if it were secured by a mortgage and had survived the discharge. As such, between July 15, 2004, and April 13, 2006, the USDA sent the Debtor an additional seventeen monthly statements reflecting a payment of $11.50 due February 28, 2006, one statement reflecting a payment of $23.46 due March 28, 2006, and one statement reflecting a payment of $35.42 due April 28, 2006. On March 29, 2006, the Debtor received a Notice of Payment Default, indicating that her account was in default, that the default had been reported to a credit reporting service, and that she was at risk of losing her home. Additionally, the USDA repeatedly called the Debtor during the same post-discharge period seeking to collect the debt.

On April 26, 2006, Debtor's counsel contacted the USDA by telephone to discuss the post-discharge account statements and phone calls received by the Debtor. As a result of the call, the USDA immediately corrected its records to reflect that the debt was not secured, did not survive bankruptcy, and was discharged. Two days later, the USDA sent the Debtor a letter apologizing for the inconvenience, indicating that her loan would be cancelled and explaining that she would not receive any further calls regarding the matter. On June 27, 2006, the USDA sent a final letter stating that the cancellation of her loan was complete.

On June 2, 2006, the Debtor's counsel sent a letter to the USDA demanding attorney's fees of $1,365.00 and emotional distress damages in the amount of $5,000.00 resulting from the USDA's admitted violations of the automatic stay. In response, the USDA advised the Debtor to submit a tort claim and enclosed the requisite form. In the months that followed, the Debtor's

counsel continued to send demand letters to the USDA, each time increasing the legal fees sought. On January 10, 2007, the USDA, through counsel, sent a letter to the Debtor's counsel asserting that she was not entitled to emotional distress damages in light of the decision of the United States Court of Appeals for the First Circuit in United States v. Rivera Torres (In re Rivera Torres), 432 F.3d 20 (1st Cir. 2005), and that in the absence of a claim presented in accordance with the Federal Tort Claims Act, 28 U.S.C. § 2401(b), the USDA was unable to authorize payment of any claim she might have.

On December 3, 2008, the Debtor reopened her bankruptcy case and commenced an adversary proceeding in the bankruptcy court, alleging violations of both the automatic stay and the discharge injunction. In the fall of 2009, the Debtor moved for partial summary judgment on the issue of liability and the USDA filed a cross-motion seeking dismissal of the entire complaint. On February 22, 2010, the bankruptcy court issued a Memorandum Opinion (the "Liability Decision") and order granting each motion in part, finding that the USDA violated both the automatic stay and the discharge injunction, but concluding that 11 U.S.C. § 106(a)(3) and the First Circuit's In re Rivera Torres decision barred the Debtor's claims for punitive and emotional distress damages, respectively, against the USDA. The bankruptcy court scheduled a further hearing with respect to the Debtor's actual damages and attorney's fees, reserving the question of whether damages for a violation of the discharge injunction were appropriate in this case. The Debtor sought leave to appeal the Liability Decision, but the Panel denied her request and the appeal was dismissed as interlocutory on April 13, 2010.

4

On May 27, 2010, the bankruptcy court held an evidentiary hearing on damages, at which the Debtor and her counsel testified.  The bankruptcy court took the matter under advisement and the parties filed post-trial briefs.  On July 21, 2010, the bankruptcy court issued a Memorandum Opinion and order in which it awarded attorney's fees in the amount of $11,848.50 for the violation of the automatic stay and $3,000.00 as a sanction for the violation of the discharge injunction.  While the bankruptcy court recognized that the Debtor did not provide evidence of any collectible damages other than attorney's fees, it held the Debtor was entitled to reasonable attorney's fees even in the absence of other damages, noting that "the [Debtor] in this case made an attempt to settle the issue without proceeding with litigation, but the USDA refused." Although the Debtor sought to recover $74,039.00 in attorney's fees for 448.20 hours, the bankruptcy court awarded fees limited to approximately 80 hours of work and applied the rate allowable under the Equal Access to Justice Act, 28 U.S.C. § 2412, adjusted for inflation.  The bankruptcy court reasoned that the Debtor should be awarded $4,836.00 for 39.90 hours spent during the period in which settlement was offered and rejected, and an additional $7,012.50 for 40 hours spent filing and prosecuting the Debtor's complaint.  With respect to the violation of the discharge injunction, the bankruptcy court held that a $3,000.00 sanction award was necessary "to prevent further violations."

The Debtor filed a timely Notice of Appeal on August 4, 2010, and the USDA filed a cross-appeal on August 17, 2010.

## JURISDICTION

The Panel may hear appeals from "final judgments, orders and decrees" pursuant to 28 U.S.C. § 158(a)(1).  Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),

5

218 B.R. 643, 645 (B.A.P. 1st Cir. 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. at 646 (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). The Panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. See Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.), 226 B.R. 724 (B.A.P. 1st Cir. 1998). "Generally, orders finding violations of the automatic stay and imposing sanctions are final appealable orders." Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 400 (B.A.P. 1st Cir. 2004). Although the February 22, 2010 order establishing the USDA's liability for violations of the automatic stay and discharge injunction was not final when it was entered, it became final upon the entry of the July 21, 2010 order when the bankruptcy court awarded damages for those violations because all outstanding issues were resolved.

## STANDARD OF REVIEW

On appeal, the bankruptcy court's findings of fact are reviewed pursuant to the clearly erroneous standard, and its conclusions of law de novo. See Lessard v. Wilton-Lyndeborough Coop. School Dist., 592 F.3d 267, 269 (1st Cir. 2010). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)) (internal quotation marks omitted); Melendez-Garcia v. Sanchez, 629 F.3d 25, 41 (1st Cir. 2010). "[A] bankruptcy court's assessment of damages for violations of the automatic stay is reviewed for an abuse of discretion." In re Heghmann, 316 B.R. at 400; see also Varela v. Ocasio (In re Ocasio),

272 B.R. 815, 822 (B.A.P. 1st Cir. 2002). This Bankruptcy Appellate Panel has previously

characterized the "abuse of discretion" standard as follows:

> Judicial discretion is necessarily broad - but it is not absolute. Abuse
> occurs when a material factor deserving significant weight is ignored,
> when an improper factor is relied upon, or when all proper and no
> improper factors are assessed, but the court makes a serious mistake in
> weighing them.

In re Ocasio, 272 B.R. at 828 n.12 (quoting Perry v. Warner (In re Warner), 247 B.R. 24, 25

(B.A.P. 1st Cir. 2000)).

## DISCUSSION

### I. Applicable Law

Section 362(a)(6) of the Bankruptcy Code provides that the filing of a bankruptcy

petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a

claim against the debtor that arose before the commencement of the case under this title."

11 U.S.C. § 362(a)(6). Similarly, 11 U.S.C. § 524(a)(2) states that "a discharge in a case under

this title . . .  operates as an injunction against the commencement or continuation of an action,

the employment of process, or an act, to collect, recover or offset any such debt as a personal

liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C.

§ 524(a)(2). In the present case, the bankruptcy court found that the USDA violated both the

automatic stay and discharge injunction. The USDA does not appeal those findings.

Once a court determines that the automatic stay has been violated, 11 U.S.C. § 362(k)(1)

provides that "an individual injured by any willful violation of a stay provided by this section

shall recover actual damages, including costs and attorneys' fees and, in appropriate

circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "Courts within the First

Circuit have concluded that the words 'shall recover' indicate that 'Congress intended that the award of actual damages, costs and attorney's fees be **mandatory** upon a finding of a willful violation of the stay.'" Vázquez Laboy v. Doral Mortgage Corp. (In re Vázquez Laboy), 416 B.R. 325, 332 (B.A.P. 1st Cir. 2009) (quoting In re Heghmann, 316 B.R. at 405 n.9) (emphasis in original), rev'd in part and vacated in part, No. 09-9022, 2011 WL 2119316 (1st Cir. May 27, 2011). It is the Debtor's burden to establish by a preponderance of the evidence that he or she suffered actual damages as a result of the stay violation. In re Vázquez Laboy, 416 B.R. at 332; In re Heghmann, 316 B.R. at 403-404.

Unlike 11 U.S.C. § 362, no specific provision exists in the Bankruptcy Code to provide redress for violations of the discharge injunction. Nonetheless, "'[a] bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages for the [debtor] . . . if the merits so require.'" Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 17 (1st Cir. 2006) (quoting Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000)); see also Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009). "Section 105(a) confers 'statutory contempt powers' which 'inherently include the ability to sanction a party.'" Fatsis v. Braunstein (In re Fatsis), 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009) (quoting Ameriquest Mortgage Co. v. Nosek (In re Nosek), 544 F.3d 34, 43-44 (1st Cir. 2008)).

Courts have recognized two types of sanctions. Civil contempt sanctions are designed to coerce the contemnor into compliance with a court order or to compensate a harmed party for losses sustained. See United States v. United Mine Workers of Am., 330 U.S. 258, 303-304 (1947); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911); Ingalls v. Thompson

8

(In re Bradley), 588 F.3d 254 (5th Cir. 2009); Eck v. Dodge Chemical Co. (In re Power

Recovery Sys., Inc.), 950 F.2d 798 (1st Cir. 1991).  In contrast, criminal contempt sanctions are

punitive in nature and are imposed for the purpose of vindicating the authority of the court.  See

id.  Where a contempt sanction is not compensatory, it is civil, and therefore non-punitive, only

if the contemnor is afforded some opportunity to purge the contempt.  See Int'l Union v.

Bagwell, 512 U.S. 821, 829 (1994); Penfield Co. of Cal. v. SEC, 330 U.S. 585, 590 (1947).

Notwithstanding the bankruptcy court's power to award damages under 11 U.S.C.

§ 362(k)(1) and its statutory contempt powers under 11 U.S.C. § 105(a), a court may not award

damages against the United States unless sovereign immunity has been expressly and

unequivocally waived.  See United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992)

(quoting Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 95 (1990)) ("Waivers of the

Government's sovereign immunity . . . must be 'unequivocally expressed' . . . [and] are not

generally to be 'liberally construed.'").  Section 106(a) of the Bankruptcy Code is such a waiver,

but it is not absolute.  It provides, in relevant part:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is
> abrogated as to a governmental unit to the extent set forth in this section with
> respect to the following:
>
> (1) Sections 105 . . . 362 . . . [and] 524 . . . of this title.
>
> (2) The court may hear and determine any issue arising with respect to the
> application of such sections to governmental units.
>
> (3) The court may issue against a governmental unit an order, process, or
> judgment under such sections or the Federal Rules of Bankruptcy
> Procedure, including an order or judgment awarding a money recovery,
> but not including an award of punitive damages. Such order or judgment
> for costs or fees under this title or the Federal Rules of Bankruptcy
> Procedure against any governmental unit shall be consistent with the
> provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. § 106(a). Notably, punitive damages are expressly excepted from the waiver of sovereign immunity. 11 U.S.C. § 106(a)(3). As such, "[the] distinction between coercive and punitive sanctions, which serves to distinguish between civil and criminal contempt, is particularly important in this case where Congress expressly declines to waive sovereign immunity for punitive damages." Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1558 (11th Cir. 1996).

In In re Rivera Torres, a case involving a violation of the discharge injunction, the First Circuit held that "Congress has not 'definitely and unequivocally' waived sovereign immunity under § 106 of the Bankruptcy Code for emotional damages. We must assume that had Congress meant to waive sovereign immunity for all forms of 'monetary relief' or 'money damages' specifically, it could have done so." 432 F.3d at 34 (internal citation omitted). Performing a temporal analysis by which the First Circuit looked to the congressional understanding of the enumerated section at the time of its amendment, it reasoned that when Congress amended 11 U.S.C. § 106(a) in 1994, there was no consensus in the background law as to whether emotional distress damages were "actual damages," so reference to 11 U.S.C. §§ 105 and 524, or by analogy, 11 U.S.C. § 362, did not "clearly establish[] the availability, even against private

10

parties, of an award of emotional distress damages." Id. at 28-29.[1]  Moreover, relying on Bowen

v. Massachusetts, 487 U.S. 879, 895 (1988), the First Circuit concluded that the waiver

contained in 11 U.S.C. § 106(a)(3) for a "money recovery" was not equivalent to "money

damages," and therefore could not have included emotional distress damages.  Id. at 29.

Accordingly, under established First Circuit precedent, emotional distress damages are

unavailable against the United States.

 With this statutory framework in mind, we address the issues presented by the parties

seriatim.

## II.  Emotional Distress Damages Against the Federal Government

 The main purpose of the Debtor's appeal is to seek the reversal of In re Rivera Torres,

which she contends was wrongly decided.  The Debtor argues that the First Circuit erroneously

relied on legislative history to analyze 11 U.S.C. § 106 rather than the plain text of the statute,

contradicting well-settled principles of statutory construction.  She asserts that this caused the

First Circuit to ignore the Bankruptcy Code's internal rules of construction which require the

word "including," as it appears in 11 U.S.C. § 106(a)(3), to be read in a non-limiting manner.

See 11 U.S.C. § 102(3) ("In this title . . . 'includes' and 'including' are not limiting").

Alternatively, even had Congress intended "money recovery" to be a limited term, she contends

that it must at least mean compensatory damages, which, according to First Circuit precedent,

include emotional distress damages.  See Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d at 269.

---

[1]  The First Circuit nonetheless noted the existence of dicta in a prior decision of the First Circuit
in Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265 (1st Cir. 1999), suggesting that emotional distress
damages may be available as "actual damages" for violations of the automatic stay.  In re Rivera Torres,
432 F.3d at 29.

Moreover, the Debtor asserts that the specific exclusion of punitive damages in 11 U.S.C. § 106(a)(3) should have raised an inference that Congress waived sovereign immunity for all other types of remedies under the maxim of *expressio unius est exclusio alterious* – the expression of one thing is the exclusion of other things.  See, e.g., United States v. Hernandez-Ferrer, 599 F.3d 63, 67-68 (1st Cir. 2010).  With these considerations in mind, she argues that reference to 11 U.S.C. § 105 in 11 U.S.C. § 106(a)(1) indicates Congress' intent to waive sovereign immunity with respect to the "broad authority" 11 U.S.C. § 105 confers upon the bankruptcy court.  Finally, the Debtor asserts that the holding of In re Rivera Torres is contrary to the purpose of the Bankruptcy Code and undermines the bankruptcy court's ability to control proceedings to prevent governmental creditors from "harass[ing] debtors to the brink of insanity."

We acknowledge that the First Circuit's analysis differs from that of the United States Court of Appeals for the Eleventh Circuit, which held that 11 U.S.C. § 106(a) unequivocally waives sovereign immunity for non-punitive court ordered money damages under 11 U.S.C. § 105 so long as they are necessary and appropriate, see Jove Engineering, Inc. v. I.R.S., 92 F.3d at 1555 and Hardy v. United States (In re Hardy), 97 F.3d 1384 (11th Cir. 1996), but In re Rivera Torres is binding First Circuit precedent which the Panel, as well as the bankruptcy court, is bound to follow under the principles of *stare decisis*.  The Debtor concedes as much.[2]  Therefore, the bankruptcy court did not err finding that emotional distress damages for violations of the discharge injunction were unavailable against the USDA.

---

[2]  We further note that the Eleventh Circuit cases pre-date In re Rivera Torres and were discussed by the First Circuit in its decision.  432 F.3d at 27-28.

Nonetheless, the Debtor argues the bankruptcy court erred in finding that In re Rivera Torres bars emotional distress damages for violations of the automatic stay against the federal government because that case only involved a violation of the discharge injunction.  She contends that the First Circuit's discussion of 11 U.S.C. § 362, was not essential to its holding and, therefore, is non-binding dicta.  Indeed, she asserts there is cause to distinguish the two because 11 U.S.C. § 362(k)(1) expressly provides for the recovery of "actual damages," which, based upon the First Circuit's decision in Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d at 269, includes damages for emotional distress.  Moreover, while admitting that the law governing the recoverability of emotional distress damages for violations of the automatic stay and discharge injunction is unsettled, the Debtor cites a number of cases that she believes indicate a trend towards allowing such damages against the federal government.  See, e.g., In re Griffin, 415 B.R. 64 (Bankr. N.D.N.Y. 2009) (holding emotional distress damages for a willful violation of the automatic stay were recoverable against the Social Security Administration); Atkins v. United States (In re Atkins), 279 B.R. 639 (Bankr. N.D.N.Y. 2002) (awarding the debtor $30,000.00 as compensation for mental anguish and sleeplessness due to the federal government's repeated violations of the discharge injunction over a fourteen-year period); Covington v. Internal Revenue Serv. (In re Covington), 256 B.R. 463 (Bankr. D.S.C. 2000) (finding debtors were entitled to $1,000.00 in damages for emotional distress resulting from the IRS's willful stay violation); Davis v. United States (In re Davis), 201 B.R. 835 (Bankr. S.D. Ala. 1996) (deciding the IRS's willful violation of the automatic stay warranted compensatory damages in the amount of $300.00 for embarrassment and inconvenience); Matthews v. United States (In re Matthews),

13

184 B.R. 594 (Bankr. S.D. Ala. 1995) (awarding the debtors $3,000.00 for mental anguish caused by the IRS's violations of the automatic stay and discharge injunction).

As explained above, in <u>In re Rivera Torres</u>, the First Circuit held that "Congress has not 'definitely and unequivocally' waived sovereign immunity under § 106 of the Bankruptcy Code for emotional damages," after determining through a temporal analysis that the background law at the time Congress amended 11 U.S.C. § 106 did not support a reading that emotional distress damages were available as "actual damages" or a remedy for civil contempt.  432 F.3d at 26. While consideration of 11 U.S.C. § 362 was not essential to that holding, the First Circuit's conclusion that a temporal analysis is necessary to define the scope of the waiver contained within 11 U.S.C. § 106 is binding.  As such, the Panel is not free to adopt the Debtor's construction of the statute simply because that case involved a violation of the discharge injunction rather than a stay violation.  Moreover, she has not offered any persuasive reason why the Panel, using the temporal analysis mandated by <u>In re Rivera Torres</u>, would find emotional distress damages are available under 11 U.S.C. § 362(k)(1) particularly where the First Circuit, albeit in dicta, noted the contrary.  <u>Id.</u> at 28-29.  Accordingly, the bankruptcy court did not err in finding that emotional distress damages for violations of the automatic stay were also unavailable against the USDA.

Ultimately, to the extent that the Debtor seeks reversal of binding precedent, reconsideration of <u>In re Rivera Torres</u>, if appropriate, must be left to the First Circuit.

## III.  Attorney's Fees Awarded under 11 U.S.C. § 362(k)

From the outset, we recognize that, while the bankruptcy court awarded attorney's fees under 11 U.S.C. § 362(k)(1), the facts of this case are such that the USDA's collection efforts

began as a violation of the automatic stay, but ultimately became a violation of the discharge injunction upon the termination of the automatic stay once the Debtor received her discharge. The USDA notes as much, seemingly to refute the idea that any fees are warranted under 11 U.S.C. § 362(k) because the automatic stay was no longer in effect by the time Debtor's counsel contacted the USDA. We find, however, that this is a distinction without a difference as attorney's fees would otherwise have been available as compensatory damages under 11 U.S.C. § 105(a) for the USDA's violation of the discharge injunction and would be analyzed under the same standard. See, e.g., In re Pratt, 462 F.3d at 17 (holding debtors are entitled to establish and recover their compensatory damages under 11 U.S.C. § 105(a) for violations of the discharge injunction); Bessette v. Avco Fin. Servs., Inc., 230 F.3d at 445 (recognizing bankruptcy courts may appropriately use their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates 11 U.S.C. § 524).

That being said, the USDA asserts that the bankruptcy court's award of attorney's fees is erroneous in three respects. First, contrary to the bankruptcy court's findings, the USDA argues that an adversary proceeding was unnecessary because the Debtor suffered no recoverable actual damages and therefore there was no legitimate basis for the USDA to reach a monetary settlement. Second, even if the Debtor were entitled to attorney's fees accrued prior to the cessation of the USDA's collection activities as actual damages, which it contends she is not, the USDA, relying on Sternberg v. Johnston, 595 F.3d 937 (9th Cir. 2010), cert. denied, 131 S. Ct. 102 (2010), asserts that the vast majority of fees awarded are not available as a matter of law because they were incurred through litigation to collect the alleged actual damages. Third, the

USDA argues that even assuming that such fees are recoverable, they were grossly excessive. Generally speaking, the USDA's argument implicitly characterizes attorney's fees as something other than actual damages, asserting that 11 U.S.C. § 362(k)(1) should be read to require that an individual suffer an "injury" other than attorney's fees before any entitlement to attorney's fees arises. See 11 U.S.C. § 362(k)(1) ("[A]n individual *injured* by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees . . . .") (emphasis added). This interpretation ignores the plain language of the statute which expressly states that attorney's fees *are* actual damages under 11 U.S.C. § 362(k)(1). Id. ("actual damages, *including costs and attorneys' fees . . .*") (emphasis added); see also In re Vázquez Laboy, 2011 WL 2119316, at *7 ("The Debtors claim injury: they have expended court costs and attorneys' fees in order to vindicate the automatic stay, and the statute mandates that they may recover both as actual damages."). By requiring a debtor to incur an injury other than attorney's fees before such fees are recoverable, the USDA effectively strikes the word "including" from the statute. Moreover, it fails to recognize that ending a stay violation, such as the one here, often requires intervention by legal counsel who should not be expected to perform services without payment. Therefore, to the extent that the Debtor incurred legal fees of $1,365.00 to stop the USDA's willful violation of the automatic stay, she suffered actual damages and was "injured" within the meaning of the statute.

Having determined that the Debtor suffered actual damages, we turn to the question of whether the adversary proceeding was necessary. The bankruptcy court concluded that it was because the USDA rebuffed the Debtor's settlement attempts. The USDA disagrees, arguing that settlement was unwarranted under existing law because emotional distress damages are not

recoverable against the federal government under In re Rivera Torres. The USDA concedes, however, that it made no counter-offer with respect to the Debtor's recoverable actual damages, namely, her attorney's fees. Accordingly, we agree with the bankruptcy court that an adversary proceeding was necessary to vindicate the Debtor's rights.

Nonetheless, the USDA urges the Panel to adopt the holding of Sternberg v. Johnston, 595 F.3d at 940, and find that attorney's fees incurred in pursuit of an award of actual damages long after the cessation of conduct that violates the automatic stay are not recoverable under 11 U.S.C. § 362(k). In Sternberg, the United States Court of Appeals for the Ninth Circuit, recognizing that "Congress legislates against the back-drop of the 'American Rule,'" whereby parties generally bear their own legal expenses, concluded that "actual damages" is an ambiguous phrase. 595 F.3d at 946-47. Looking to the dictionary, the Ninth Circuit determined that the plain meaning of "actual damages" was "an amount awarded . . . to compensate for a proven injury or loss," id. at 947 (quoting Black's Law Dictionary 416 (8th ed. 2004)), and that, in the context of a stay violation, proven injuries are related to the stay violation itself and cannot include fees incurred to correct the legal injury. Id. The Ninth Circuit reasoned that this view was supported by both the "financial and non-financial goals" of the automatic stay because the automatic stay is "not a sword" with which to pursue creditors who violate the stay to the advantage of the debtor. Id. at 948. The Ninth Circuit concluded an action for damages for a violation of the automatic stay was akin to an ordinary damages action. Id. Notably, the Ninth Circuit's ruling in Sternberg created a split among the circuits as the United States Court of Appeals for the Fifth Circuit previously held that fees incurred prosecuting a claim for a violation of the automatic stay are recoverable. See Young v. Repine (In re Repine), 536 F.3d

17

512, 522 (5th Cir. 2008). Because the Fifth Circuit did not discuss the issue in depth and merely

adopted the view of the lower courts, id., the Ninth Circuit stated that "[w]ithout more, [it was]

hard-pressed to find th[at] decision persuasive." Sternberg, 595 F.3d at 948.

The decision in Sternberg has been sharply criticized. For example, in Grine v.

Chambers (In re Grine), 439 B.R. 461 (Bankr. N.D. Ohio 2010), the court stated:

> This court disagrees with the holding and the unpersuasive reasoning in
> Sternberg. The Ninth Circuit dubiously found that the straightforward language
> of § 362(k) is ambiguous, then looked for guidance to a law dictionary and
> examples of state law malpractice and bad faith causes of action not created by
> any federal statute. This court does not find the language of the statute
> ambiguous or in need of odd parsing of simple language or resort to a dictionary
> or the guidance of Tennessee, California or Colorado state common law to inform
> the intent of Congress in § 362(k). Significantly, this specific provision of § 362,
> and indeed § 362 extensively in general, was materially amended by Congress in
> 2005 in respects not relevant to this case but in ways that can fairly be
> characterized as creditor-friendly. By that time, there was substantial established
> precedent, including Ninth Circuit and Ninth Circuit Bankruptcy Appellate Panel
> cases, see, e.g., In re Dawson, 390 F.3d 1139 (9th Cir. 2004); Havelock v. Taxel
> (In re Pace), 159 B.R. 890, 900 (9th Cir. BAP 1993), awarding fees for
> prosecuting then § 362(h) claims and adversary proceedings as "actual damages"
> against creditor defendants for violation of the automatic stay. If in 2005
> Congress thought that established case law and such fee awards misconstrued the
> plain meaning of its statute, and improperly penalized creditors for actions in
> disregard of § 362(a), it had the opportunity to fix the problem by amending
> § 362(h) to remove any ambiguity in and the misconception by many courts of its
> expressed intent. It did not. Moreover, the Ninth Circuit itself in the case Orange
> Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc. (In
> re Southern California Sunbelt Developers, Inc.), 608 F.3d 456 (9th Cir.2010),
> has since resorted equally unpersuasively to hyper-technical legal gymnastics to
> distinguish Sternberg in the context of applying § 303(i) of the Bankruptcy Code,
> which permits a judgment for attorney's fees upon dismissal of an involuntary
> petition. 11 U.S.C. § 303(i).
>
> This court also disagrees with the policy analysis advanced by the Ninth Circuit
> in support of its holding in Sternberg. The Ninth Circuit's statement that
> "[p]ermitting a debtor to collect attorney fees incurred in prosecuting a damages
> action would further neither the financial nor the non-financial goals of the
> automatic stay," Sternberg, 595 F.3d at 948, is simply wrong. The automatic stay
> and the breathing room it affords from creditor collection activities play a vital

and fundamental role in bankruptcy. <u>Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection</u>, 474 U.S. 494, 503, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). The fee shifting provision in § 362 serves to protect rights belonging to persons in difficult circumstances that are not necessarily measured by money alone. <u>Cf. City of Riverside v. Rivera</u>, 477 U.S. 561, 577–78, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Without such a provision, individual debtors' attorneys would be less likely to pursue vindication of the stay and their clients' rights thereunder, both because their bankrupt clients lack the money to pay hourly fees and because of the oftentimes relatively small amount of probable damages, as in this case, making a contingency fee wholly impractical. The <u>Sternberg</u> holding that the right to fees under § 362(k) stops at the courthouse door gives creditors free shots at continuing pre-petition collection activity with little practical fear of financial accountability for their actions and hence little incentive to stop it. Under the Ninth Circuit analysis, a debtor who sustains injury from and seeks the help of counsel to stop automatic stay violations is effectively powerless to make a creditor pay the damages and fees incurred. Whether conduct constitutes a violation is also oftentimes reasonably disputed by the parties, giving debtors' counsel little incentive to litigate the contours of § 362(a) in close cases for the benefit both of any particular debtor as well as for the bankruptcy system as a whole. As one bankruptcy judge in the Ninth Circuit rhetorically asks in likewise noting that "<u>Sternberg</u> weakens substantially the effectiveness of the automatic stay," "[w]hat good is it to be entitled to damages and attorneys' fees for a violation of the automatic stay if it costs a debtor much more in unrecoverable fees to recover such damages and recoverable attorneys fees? In many, if not most, cases that will likely be the situation." <u>Bertuccio v. Cal. State Contrs. License Bd. (In re Bertuccio)</u>, Case No. 04–56255, 2009 Bankr. LEXIS 3302 *22–23 n. 7, 2009 WL 3380605 *7 n. 7 (Bankr. N.D. Cal. Oct.15, 2009).

439 B.R. at 470-471. We find this criticism unassailable and adopt it as our own.

If the purpose of the automatic stay is, as the Ninth Circuit recognized, to preserve the status quo, <u>see</u> <u>Sternberg</u>, 595 F.3d at 948; <u>Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n</u>, 997 F.2d 581, 585 (9th Cir. 1993), then the mechanism by which stay violations are remedied must necessarily return the debtor to the status quo in order to serve that purpose. A contrary rule would, as it did here, discourage creditors who concede liability from settling with the debtor, particularly where punitive damages are unavailable. Moreover, this rule would often harm the other creditors of the estate because the debtor, who likely lacks the means to fund

litigation in the first place, would be forced to choose between suffering a loss as a result of the stay violation or incurring a loss attempting to remedy it. Such a result, specifically one arising from conduct which violates the most fundamental protection offered by the Bankruptcy Code, is incompatible with its spirit and purpose. See Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) ("The automatic stay is among the most basic of debtor protections under bankruptcy law.").

Finally, the USDA argues that the attorney's fees awarded are "grossly excessive" because they are nearly ten times the Debtor's "pre-litigation actual damages." Notably, the USDA only challenges the amount of fees awarded, not the methodology employed by the bankruptcy court to determine that amount. The USDA reasons that because $1,365.00 was the most the Debtor could have recovered under prevailing law, she should not be rewarded for choosing to "run up a large legal bill in an effort to recover the unrecoverable" instead of offering a settlement in that amount. The USDA asserts that "[t]his is precisely the kind of wasteful litigation that French discourages. Yet, the bankruptcy court's decision to award the plaintiff attorney's fees in an amount ten times greater than her potential best case result leads to just the opposite incentive of encouraging this kind of long-shot litigation instead of making reasonable pre-litigation settlement offers." See French v. Corporate Receivables, Inc., 489 F.3d 402 (1st Cir. 2007).

The USDA's reasoning and arguments are flawed and lack merit. The USDA refused the Debtor's pre-litigation offer of settlement. Regardless of whether that settlement offer included a demand for unrecoverable emotional distress damages, the attorney's fees were recoverable and the USDA made no counter-offer in response to the demand. Indeed, the USDA did not

20

even address the issue of attorney's fees incurred to stop the impermissible collection efforts in its letter to the Debtor's counsel. Apparently, the USDA took the erroneous position that attorney's fees, absent some other injury, are unrecoverable under 11 U.S.C. § 362(k)(1). Proven wrong, the USDA cannot now complain that its own intransigence forced the Debtor to incur additional legal fees to recover her actual damages.[3] In sum, the litigation was neither wasteful nor a "long-shot," particularly where liability was already conceded.

The bankruptcy court calculated the award of attorney's fees based upon rates allowable under the Equal Access to Justice Act, 28 U.S.C. § 2412, adjusted for inflation, and concluded that a reasonable amount of time spent on this case was 39.90 hours during the period in which settlement was offered and rejected, and an additional 40 hours to file and prosecute the adversary proceeding. This yielded a total amount of $11,848.50, which is approximately 16 percent of the amount requested by the Debtor.[4] The bankruptcy court's methodology was sound and we find no abuse of discretion.

**IV**. **The $3,000.00 Sanction Awarded under 11 U.S.C. § 105(a)**

The USDA argues that the $3,000.00 sanction for the violation of the discharge injunction to "prevent further violations" was an impermissible punitive sanction because it was afforded no opportunity to purge its contempt. Indeed, the adversary proceeding was not even commenced until long after the violations of the discharge injunction had ceased. As explained above, the ability to purge one's contempt is a pre-requisite for a non-compensatory coercive

---

[3] Had the Debtor refused a reasonable counter-offer of settlement regarding the attorney's fees to stop the USDA's violation of the automatic stay, perhaps this argument would carry more weight.

[4] Given the bankruptcy court's substantial reduction of the Debtor's fee request, there can be no real argument that the USDA is funding her attempt to reverse First Circuit precedent.

civil contempt sanction, failing which, the sanction is punitive in nature.  See Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. at 829; Penfield Co. of Cal. v. SEC, 330 U.S. at 590.  Although the Debtor grudgingly conceded at oral argument that the sanction was at least partially coercive in nature, she suggests it was nonetheless compensatory because she suffered injuries as a result of those violations.  The Debtor's reasoning is flawed for two reasons.  First, the bankruptcy court indicated that the sanction was to "prevent further violations," evidencing a clear intent to deter future violations.  Second, the Debtor did not suffer any compensable damage other than attorney's fees for which she was already compensated under 11 U.S.C. § 362(k)(1).  Therefore, given that the violation had ceased long before the sanction entered, the Debtor incurred no actual damages as a result of the violation, and the absence of an ability to purge the contempt, the "prevent further violations" language of the order serves only the purpose of vindicating the bankruptcy court's authority.  As such, the bankruptcy court erred by awarding a punitive sanction barred by 11 U.S.C. § 106(a)(3).

## CONCLUSION

For the reasons stated above, we conclude that the bankruptcy court correctly found that the First Circuit's decision in In re Rivera Torres bars awards of emotional distress damages against the federal government for violations of the automatic stay and discharge injunction and did not abuse its discretion by awarding the Debtor attorney's fees in the amount of $11,848.50 for the USDA's violation of the automatic stay.  Nevertheless, the bankruptcy court erred as a matter of law by awarding $3,000.00 punitive sanction against the federal government. Therefore, we **AFFIRM IN PART** and **REVERSE IN PART**.

22